OPINION OF THE COURT
Per Curiam.
Petitioners are contractors who appeal from a judgment which confirmed orders of respondent, Commissioner of Labor, finding that they had violated section 220 of the Labor Law by failing to pay prevailing wages and supplements to employees engaged by them on a State-funded project of the New York State Facilities Development Corporation at the Manhattan Psychiatric Center. The orders were based upon determinations made by a Department of Labor Hearing Officer who found that petitioners had hired "trainee” electricians and paid them less than the prevailing wage rates for journeymen electricians. Accordingly, the Hearing Officer recommended payment of wages and supplements to the trainees in an amount sufficient to compensate them during the period of employment as journeymen, plus interest, and also imposition of a civil penalty on petitioners. Respondent adopted the Hearing Officer’s findings and directed that the compensation and penalty be paid from moneys the State owed petitioners under the construction contracts.
*95 Section 220 of the Labor Law and article I, section 17 of the New York Constitution require that laborers, workers and mechanics be paid the statutorily determined prevailing rate of wages. As originally enacted, the prevailing wage law contained no provision regulating the employment of apprentices on public works projects. In 1966, however, the Legislature amended Labor Law § 220 (3) to provide that: "The wages to be paid for a legal day’s work * * * to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages * * * Serving laborers, helpers, assistants and apprentices shall not be classified as common labor and shall be paid not less than the prevailing rate of wages * * * No employee shall be deemed to be an apprentice unless he is individually registered in an apprenticeship program which is duly registered with the industrial commissioner in conformity with the provisions of article twenty-three of this chapter” (L 1966, ch 976 [emphasis added]). The following year the Legislature added section 220 (3-e), to expressly prohibit working as an apprentice on a public works project unless a person is individually registered in a State-approved apprenticeship program, and to regulate the allowable ratio of apprentices to journey-level workers (L 1967, ch 503).
These amendments were enacted to prevent subversion of the prevailing wage law, which itself was intended to thwart what had become a widespread competitive practice among contractors of exploiting the labor force in order to submit the lowest bid for public work (Matter of Action Elec. Contrs. Co. v Goldin, 64 NY2d 213, 222). Prior to the amendments, contractors could set up sham training programs which were not supervised by the State, classify persons as apprentices regardless of skill level, and pay them less than journey-level wages (see, Governor’s Bill Jacket for L 1966, ch 976, Mem of Senator Thomas Láveme). The amendments sought to provide a clear, fixed, objective standard by which to measure whether a particular person employed as an apprentice and paid as an apprentice on a public works project was an apprentice, or in fact a skilled worker employed at less than a journey-level wage. They also sought to equalize "minimum labor costs between union contractors and nonunion employers who held an unfair advantage through lower labor costs” (Associated Bldrs. & Contrs. v City of Rochester, 67 NY2d 854, 856). Moreover, the amendments were intended to prevent employers from cutting standards of construction work by hiring an excessive number of unskilled employees, and to ensure that *96 learning-level workers receive approved, supervised training (see, Governor’s Bill Jacket for L 1966, ch 976, Mem of Senator Thomas Laverne).
Respondent has interpreted Labor Law §220, as amended, with judicial approval, to require classification of workers by status — as either journeymen or apprentices — and by expertise, as carpenters, ironworkers, roofers, etc., and to require that all covered workers be paid a journeyman’s prevailing wage for their occupation unless they are apprentices registered in accordance with the statute (see, e.g., Matter of TAP Elec. Contr. Serv. v Roberts, 104 AD2d 548; Matter of G & G Erectors v Levine, 48 AD2d 960).
In the case before us, petitioners are members, along with approximately 85 other contractors, of United Construction Contractors Association. The Association is signatory to a collective bargaining agreement with Local 363, Allied and Industrial Trade Workers, international Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and, pursuant to the agreement, the Joint Apprenticeship and Training Council was created to maintain and supervise both an apprentice program registered with the State of New York, and a trainee program registered with the United States Department of Labor. Petitioners do not dispute that Labor Law § 220 has been construed in the past as recognizing only two categories of workers — journeymen and State-registered apprentices. Nor do they dispute that the employees here in question did not qualify for either category. Rather, petitioners contend that the trainee programs registered with the United States Department of Labor are functionally identical to the State-approved apprentice programs, and are designed to encourage participation by those traditionally excluded from the skilled trades such as women, members of minority groups, and the disadvantaged. Therefore, they argue, respondent should recognize these trainees as equivalent to, and payable at the same rate as, apprentices enrolled in State programs.
It is beyond dispute that the construction industry is, and has been, an area of employment discrimination, which has proven difficult to remedy (see, Sheet Metal Workers v Equal Employment Opportunity Commn., 478 US 421; Steelworkers v Weber, 443 US 193; Grant v Bethlehem Steel Corp., 635 F2d 1007; United States v International Union of Elevator Constructors, 538 F2d 1012; Associ *97 ated Gen. Contrs. v Altshuler, 490 F2d 9; Southern III. Bldrs. Assn. v Ogilvie, 471 F2d 680; Contractors Assn. v Secretary of Labor, 442 F2d 159; Local 53 of Intl. Assn. of Heat & Frost Insulators & Asbestos Workers v Vogler, 407 F2d 1047). The United States Supreme Court has observed that the "[¡judicial findings of exclusion from crafts [unions] on racial grounds are so numerous as to make such exclusion a proper subject for judicial notice” (Steelworkers v Weber, 443 US 193, 198, n 1, supra). In an effort to remedy the effects of this long-standing discrimination, the United States Department of Labor and the City of New York Bureau of Labor Services joined in a cooperative effort to establish organized trainee programs pursuant to the Federal prevailing wage law. (See, Davis-Bacon Act, 40 USC § 276a et seq.; 29 CFR part 29, "Labor Standards for Registration of Apprenticeship Programs”; 29 CFR part 5, "Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction”; see also, City of New York Executive Order No. 50, promulgated pursuant to above-mentioned Federal regulations.) As found by the Hearing Officer, the Federally registered trainee programs and the State registered apprenticeship programs are virtually identical in wages, on-the-job training and related classroom instruction. The only significant difference between them is in the entrance requirements. The requirements of the trainee programs are job-related and much less stringent than those of State-approved apprentice programs, having been designed to promote minority group participation.
Notwithstanding the compelling policy of eradicating discrimination from our construction industry that is served by the trainee programs, we are constrained to affirm respondent’s interpretation of the statute. We find the statute unambiguous in its recognition of only two classifications of workers —apprentices and journey-level employees — and in its requirement that, to be paid apprentice-level wages, individuals must be in an apprenticeship program registered with the New York State Department of Labor. Notwithstanding that both programs are essentially identical, and that the trainee programs reduce discrimination in the construction industry, the Labor Law, as written and as consistently interpreted, recognizes only apprentices registered with the State Department of Labor. Respondent applied its plain meaning to petitioners when she held that the trainees must be registered in a State-registered apprenticeship program to work as apprentices, *98 failing which they must be paid as journeymen. Whether or not petitioners were acting in bad faith, by using the trainee programs they were able to double the number of learning-level employees by hiring one trainee in addition to one apprentice, thereby halving the allowable ratio of learning-level employees to journeymen. It was to avoid just such duplication of unskilled employees that the Legislature limited the permissible ratio of apprentices relative to trained journeymen, on any job. Thus, accepting petitioners’ contention would result in the wage debasement that the statute was enacted to avoid by permitting the displacement of skilled workers with learning-level workers.
We emphasize nonetheless that the trainee programs successfully attempt to combat discriminatory practices in this area consistent with the State’s commitment to providing equal employment opportunities in the construction industry (see, e.g., Labor Law §815 . [5] [discrimination in selection to apprenticeship programs prohibited]; § 811 [1] [i] [Commissioner must cooperate with Federal Government in administering its apprenticeship programs]; § 811 [1] [k] [Commissioner authorized to perform such duties as are necessary to give full effect to the policies of the State]). As found by the Hearing Officer, and confirmed by the Commissioner, the State Department of Labor has been "involved in” the trainee programs established in New York City, and has not challenged the use of trainees on certain projects assisted by Federal funds. To the extent that a corollary purpose of the 1966-1967 amendments is to ensure standard, monitored training and supervision of apprentices, the trainee programs approved by the United States Department of Labor would appear to serve this purpose.
Although the Legislature clearly intended, in enacting the 1966-1967 amendments, to prohibit the use of sham training programs that were subverting the purpose of the prevailing wage law, it did not likely foresee that bona fide, federally approved trainee programs, which are consistent with the purposes of these amendments, would be rejected as acceptable alternative pools of learning-level workers. Nor could it have foreseen that, by prohibiting the payment of apprenticeship wages to unregistered apprentices, it was also prohibiting the payment of apprenticeship wages to "trainees” enrolled in these federally administered programs, and thus anomalously requiring that these "trainees” be paid a wage four times greater than that paid to their counterpart "apprentices”.
*99 In view of the threat presented by respondent’s interpretation to the future operation of trainee programs in this State, we believe it would be highly desirable for the Legislature to reexamine Labor Law § 220 in the light of 20 years’ experience, for it appears that its application today unexpectedly frustrates the very important policy of reducing discrimination in the construction labor force.
The judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Judgment affirmed, with costs.