[659 NYS2d 518]

In the Matter of LOCAL 363, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Appellants, v NEW YORK STATE DEPARTMENT OF LABOR, Respondent.

Third Department, June 19, 1997

APPEARANCES OF COUNSEL

*Meyer, Suozzi, English & Klein,* Mineola (*Michael A. Ciaffa* of counsel), for appellants.

*Dennis C. Vacco, Attorney-General,* New York City (*Jennifer S. Brand* of counsel), for respondent.

### OPINION OF THE COURT

PETERS, J.

Prior to June 1995, respondent utilized different prevailing wage schedules for voice telecommunications work and data telecommunications work performed pursuant to a public work contract (*see*, NY Const, art I, § 17; Labor Law art 8). Where the work involved the installation of data cable, the prevailing rate of pay was the electrician rate as determined in accordance with collective bargaining agreements between various local unions affiliated with the International Brotherhood of Electrical Workers (hereinafter IBEW) and their signatory employers. For work involving only voice cable, the prevailing rate of pay was the telephone technician rate, determined in accordance with collective bargaining agreements between the Communication Workers of America (hereinafter CWA) and AT&T and NYNEX.

As a result of technological changes, respondent sought to reconsider these classifications. After a public hearing and the receipt of submissions by interested groups, including a joint submission by NYNEX-CWA which advocated for a single prevailing wage classification involving " 'technicians' who install, maintain and replace communication lines * * * capable of carrying both voice and data traffic", NYNEX-CWA proposed that the prevailing wage rates for this new category of workers should be that of telephone installation field technicians.

Respondent ultimately determined that "there was no longer a rational basis for classifying the work differently and enforcing a different prevailing wage for voice transmission as opposed to data transmission". Upon merging the categories into a new category of "telecommunication worker-voice, data, video", respondent concluded that the prevailing rate for this new category of worker would be the wage schedule for telephone installation field technicians contained in the collec-

tive bargaining agreement between NYNEX and CWA. This schedule contains a series of progressive step rates permitting a rate of pay ranging from approximately $7 per hour to approximately $23 an hour, purportedly dependent upon longevity. Notwithstanding the position thereafter advocated by both CWA and IBEW that only the "top grade" field technician rate be used as the prevailing wage rate since only such technicians perform comparable work to this newly reclassified worker, respondent's position remained unchanged.

CWA attorney David Mintz protested, emphasizing to respondent that the NYNEX employees at the lower end of the step rate wage scale are effectively trainees in terms of their job responsibilities. The only reason NYNEX had not so designated them was because they did not have a State-approved apprenticeship program. Mintz described the actual training that employees must receive before they are allowed to progress to the top rate and enclosed the training course syllabi that had to be completed before any NYNEX field technicians could perform this type of tele-data work. Since only those trained employees would be paid the top rate under the NYNEX agreement, Mintz argued that only their rates of pay should be determinative. Respondent disagreed, finding that since the step rate wage schedule provides for a single journey-level employee category with different rates of pay, depending upon seniority, it was the proper prevailing wage schedule.

Petitioners commenced this CPLR article 78 proceeding, challenging the determination as arbitrary and capricious and contrary to both the spirit and letter of the prevailing wage law.* Supreme Court upheld respondent's determination, finding that the schedule containing the step rates was not the equivalent of an unapproved apprentice program which would be prohibited by law (see, Matter of Monarch Elec. Contr. Corp. v Roberts, 70 NY2d 91, 96-98). Since there is no proscription against the use of a prevailing wage schedule which includes step rates if progression is based solely upon longevity, it upheld the determination.

Upon petitioners' appeal, we find that the prevailing wage schedule adopted does not comply with the mandates of Labor Law § 220 (3), which requires that the "wages to be paid * * * shall be not less than the prevailing rate of wages * * * in the same trade or occupation". On this record, the evidence reveals

* While they also unsuccessfully challenged respondent's determination to merge these two categories, this issue was not raised on appeal.

that progression through the step rates is dependent upon the mastery of skills acquired during on-the-job training and formal course work. Only upon the completion thereof can employees perform the full complement of tasks now required under this new classification of worker. It is for precisely this reason that only the "top grade" field technician be treated as the equivalent of a journeyman for the sole purpose of determining the prevailing rate of pay for this newly designated worker.

This conclusion is buttressed by not only the training course syllabi and requisite curriculum presented, but also the affidavits of both Angel Feliciano (Central Office Technician employed by NYNEX and CWA's training coordinator) and John Maraia (Director of Education overseeing the Union's State-approved apprentice training program of petitioner Local 363 of the IBEW). Feliciano explained that aside from the basic training given upon hiring, if NYNEX employees cannot pass the required tests, learn the skills developed on the job or perform the requisite duties, they are either downgraded or terminated. Finally, field technicians with less than five years of experience as well as technicians who have not completed the specialized training programs cannot perform the tele-data work at NYNEX and are, therefore, effectively "trainees". Maraia compared the training and work experience provided to NYNEX workers at the lower step rates to that given to Local 363's State-approved apprentices. In so doing, he emphasized that their training is equivalent and, therefore, the workers at the lower step rates cannot be deemed journeymen for the purposes of the prevailing wage rate schedule.

Edward Drago, Director of Employability Development for respondent, countered with the position that "[s]ince [respondent] has been told that progression in the step rates contained in the collective bargaining agreement * * * and adopted as the prevailing wage rate by the DOL is based solely on time, the step rates do not function like an apprentice program". Edward Simmons, Associate Director of Labor Relations for NYNEX, emphasized that only the three-to-five-week initial training program is required. After that, he contended that such employees work as field technicians. Admitting that numerous training programs are available and that certain training modules may be prerequisites to moving into certain specialized aspects, he maintained that they are not mandates for continued employment. Upon this basis, Drago supports respondent's position that pursuant to this schedule, an

employee's progression from one step to another is based solely on longevity.

Notably, there remains no definitive statement indicating that field technicians at the bottom rate of pay can perform the full complement of the job required for the newly designated "telecommunication worker—voice, data, video" in this locality (*see*, Labor Law § 220 [3]). In light of the plethora of evidence to the contrary, the wholesale adoption of this multi-tiered step rate wage schedule as the prevailing rate of pay is in error. In so deciding, we note that "[t]he language of the statute is broad enough to allow the state to examine the collective bargaining agreements involved and independently to decide for itself which of the rates is the true prevailing rate, that is, 'the rate actually paid for similar work in a locality'" (*General Elec. Co. v New York State Dept. of Labor*, 936 F2d 1448, 1456).

To accept respondent's position "would result in the wage debasement that the statute was enacted to avoid by permitting the displacement of skilled workers with learning-level workers" (*Matter of Monarch Elec. Contr. Corp. v Roberts*, *supra*, at 98). Without addressing whether a wage schedule containing progressive step rates premised upon longevity would be permissible (*cf.*, *Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279, *appeal dismissed* 79 NY2d 1039), we find that respondent's determination to adopt this wage schedule with all of the step rates as the prevailing rate of pay for this newly classified worker was "without sound basis in reason and * * * without regard to the facts" (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 231). Accordingly, we annul respondent's determination.

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, determination annulled and petition granted.