International Union of Painters & Allied Trades, Dist. Council No. 4 v New York State Dept. of Labor (2018 NY Slip Op 06963)

International Union of Painters & Allied Trades, Dist. Council No. 4 v New York State Dept. of Labor

2018 NY Slip Op 06963 [32 NY3d 198]

October 18, 2018

Fahey, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 26, 2018

[*1]

International Union of Painters & Allied Trades, District Council No. 4, by its Secretary-Treasurer, Mark Stevens, et al., Respondents,
v
New York State Department of Labor et al., Appellants.

Argued September 12, 2018; decided October 18, 2018

International Union of Painters & Allied Trades, Dist. Council No. 4 v New York State Dept. of Labor, 147 AD3d 1542, reversed.

{**32 NY3d at 201} OPINION OF THE COURT

Fahey, J.

{**32 NY3d at 202}Here, the Court, once again, finds itself in the thicket of interpreting New York's constitutional prevailing wage requirement. We uphold the statute-based policy of the New York State Department of Labor limiting the payment of apprentice wages on public work projects to apprentices who are performing tasks that are within the respective trade classifications of the approved apprenticeship programs in which they are enrolled. The text of the statute is ambiguous and is best analyzed with reference to the underlying operational practices. Our analysis is governed by the deferential standard applicable to an agency's interpretation of a statute it is charged with enforcing. We hold that the Department's interpretation is rational and should be upheld.
I.
Plaintiff International Union of Painters & Allied Trades, District Council No. 4 (DC4) is a labor organization that represents skilled tradespersons in several industries, including glaziers, in Western and Central New York. Plaintiff International Union of Painters & Allied Trades, Finishing Trades Institute of Western & Central New York (FTI) is an associated "joint labor-management, non-profit trust." DC4 and FTI sponsor a glazier apprenticeship program (the DC4 Glazier Apprenticeship Program or the DC4 Program), which has been [*2]registered with defendant New York State Department of Labor (the DOL) for many years. Apprentices enrolled in the DC4 Glazier Apprenticeship Program are placed in field assignments with contractors that specialize in the manufacture and installation of glass products, including plaintiffs Forno Enterprises, Inc., TGR Enterprises, Inc., Hogan Glass, LLC, and Ajay Glass & Mirror Co. (the Glazing Contractors).
The DOL is responsible for enforcing the prevailing wage law applicable to work on public projects in each locality, classifying work performed on such projects as a "task" assigned to a specific trade, and regulating apprenticeship programs. The agency determines prevailing wage rates for two categories of worker within each trade: journeyworkers and apprentices.
The curriculum of the DC4 Glazier Apprenticeship Program requires apprentices to spend a specific number of hours performing the installation of storefronts and entrances, curtain wall, and preglazed windows. However, each of these "work processes" involves both glazier "tasks" and ironworker "tasks." For example, if an apprentice is engaged in the{**32 NY3d at 203} construction of curtain wall, forming the glass outer covering of a building, the apprentice may be performing ironwork when installing the metal frames, but glazier work if installing glass settings.[FN1]
According to plaintiffs' complaint, apprentices in the DC4 Program typically meet their hourly requirements by working for glazing contractors on public projects. The glazing contractors in turn benefit financially because they pay lower wages and benefit rates to the apprentices than they would to journeyworkers. This advantage enjoyed by the contractors is constrained, however, by Labor Law § 220 (3-e), which provides that
"[a]pprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the [DOL]. The allowable ratio of apprentices to journeymen in any craft classification shall not be greater than the ratio permitted to the contractor as to his work force on any job under the registered program. Any employee listed on a payroll at an apprentice wage rate, who is not registered as above, shall be paid the wage rate determined by the [DOL] for the classification of work [the employee] actually performed."
As the DOL explains on its website, the agency interprets this statute to mean that
"[e]mployees cannot be paid apprentice rates unless they are individually registered in a program registered with the [DOL]. . . . An employee listed on a payroll as an apprentice who is not registered as above or is performing work outside the classification of work for which the apprentice is indentured, must be paid the prevailing journeyworker's wage rate for the classification of work the employee is actually performing" (NY St Dept of Labor, General Provisions of Laws Covering Workers on Public Work Contracts, https://www.labor.ny.gov/workerprotection/publicwork/pwgeneralprovisions.shtm [last accessed Sept. 20, 2018],{**32 NY3d at 204} cached at 
 http://www.nycourts.gov/reporter/webdocs/NYSDOLGenProvLawsCoveringWorkers.pdf).
In other words, the DOL interprets Labor Law § 220 (3-e) to mean that apprentices employed on public work projects may be paid apprentice rates only if they are performing tasks within the trade classification (e.g., "glazier," "ironworker") that is the subject of the apprenticeship program in which they are enrolled. Apprentices who are performing tasks, in the installation of storefronts, curtain wall, and preglazed windows, that are classified as ironwork tasks may be paid the apprentice rate only if they are enrolled in an ironworker apprentice program (approved by the DOL), as opposed to a glazier apprentice program. Apprentices learning any trade other than ironwork, including those enrolled in a glazier apprenticeship program, must be paid journey-level ironworker prevailing wages and benefit rates if they are engaged in the parts of a work process that are classified as ironwork tasks.
II.
Plaintiffs—DC4, FTI, the Glazing Contractors, a DC4 Program apprentice, a DC4 Program graduate, and two citizen taxpayers—brought this declaratory judgment action against the DOL, its Acting Commissioner, and Christopher Alund, the Director of the DOL's Bureau of Public Work. Plaintiffs seek a judgment declaring that glazing contractors may compensate apprentices registered and enrolled in the DC4 Program in accordance with the applicable apprentice rates posted by the DOL on taxpayer-financed projects, as opposed to journey-level wages. They assert that the DOL's interpretation of Labor Law § 220 (3-e) violates the plain meaning of the law, and that the statute permits contractors on public works to pay apprentices the posted apprentice rates, provided that they are registered in any DOL-certified apprenticeship program. Plaintiffs also sought related injunctive relief.
Several affidavits accompany the complaint. The principals of the Glazing Contractors state that they would not hire apprentice glaziers on public projects unless they could pay them apprentice wage rates. Insofar as the DOL requires them to pay journey-level prevailing wages to glazier apprentices for public work tasks classified as ironwork, the Glazing Contractors instead employ fully skilled glazier journeyworkers for{**32 NY3d at 205} those tasks. Plaintiffs argue that, because of the higher wages paid, the Glazing Contractors charge public customers substantially more than private customers, whose work can be done by glazier apprentices at apprentice rates. They assert that, in this manner, the DOL's interpretation of the statute has the result of inflating the cost of taxpayer-financed projects and that glazier apprentices lose opportunities for on-the-job training.
Defendants answered and moved to dismiss the complaint and, in particular, for summary judgment on the cause of action outlined above. In an affidavit, defendant Christopher Alund, the Director of the DOL's Bureau of Public Work, noted that
"a glazier apprentice may be paid glazier apprentice wages on a public work project for tasks that are classified as glazier's work: for example, installation of glass-related products such as glass settings, sealants, and pressure plates into curtain wall; installing glass into metal frames of storefronts and entrances, with the possible exception of some specialty work; and any other work that DOL classifies as within the glaziers' trade."
On the other hand, "[i]f an ironworker apprentice performed such work on a public work project, the apprentice could not be paid an apprentice wage but would have to be paid a glazier's journey[worker] prevailing rate."
In her affidavit, the Director of the DOL's Apprenticeship Training Program explained that requiring apprentices to perform work that is classified as within the trade they are learning, in order to be paid at the apprentice wage rate, ensures that a public-work contractor will not treat apprentice labor as a commodity. The Training Program Director pointed out that "[i]f public-work contractors could lower their wage bill by employing any apprentice to perform any trade's work, that would limit the likelihood that an apprentice received training for work within the trade the apprentice is learning."
Plaintiffs cross-moved for summary judgment on their complaint. Countering the DOL's policy concerns, the secretary of one of the Glazing Contractors opined in her affidavit that there is no incentive for glazing contractors to hire apprentices other than glazier apprentices to perform glazier work, because
"it would make absolutely no economic sense to employ apprentices who know nothing about the{**32 NY3d at 206} work of glaziers to perform our work. . . . Put simply, [the Glazing Contractors] operate in highly competitive markets and in a technically advanced trade where the training and skill level of . . . employees, including apprentices, spells the difference between economic success and failure."
Supreme Court granted defendants' motion, granted declaratory relief in defendants' favor, and otherwise dismissed plaintiffs' complaint, stating that the DOL's "determination that the work in question is that of the ironworkers and not of the glaziers is not unreasonable or arbitrary or capricious." (2015 NY Slip Op 32859[U], *3 [2015].) The Appellate Division reversed, denied defendants' motion, reinstated the complaint, granted plaintiffs' cross motion, and "[a]djudged and declared that glazing contractors may compensate apprentices registered and enrolled in the DC4 Glazier Apprenticeship Program in accordance with the applicable apprentice rates posted by defendant [the DOL] on taxpayer financed [*3]projects" (147 AD3d 1542, 1542 [4th Dept 2017]). The Appellate Division held
"that Labor Law § 220 (3-e), by its terms, permits glazier apprentices who are registered, individually, under a bona fide glazier apprenticeship program to work and be paid as apprentices even if the work they are performing is not work in the same trade or occupation as their apprenticeship program" (id. at 1546).
The Court reasoned that there was no need to defer to the DOL's interpretation of Labor Law § 220, in light of "the plain meaning of" the statutory language (id. at 1543) and on the ground that the interpretation did not involve specialized knowledge and understanding of operational practices (see id. at 1544).
One Justice dissented, rejecting the majority's plain meaning analysis and pointing out that "[t]he language of the statute is ambiguous and lends itself to either of the competing interpretations offered by the parties" (id. at 1548 [Whalen, P.J., dissenting]). The dissenting Justice observed that "[t]he DOL is charged with implementing and enforcing both the prevailing wage law, and supervising and maintaining standards for apprenticeship programs. Consequently, defendants' interpretation of Labor Law § 220 (3-e) is entitled to deference and must be upheld absent demonstrated irrationality or unreasonableness" {**32 NY3d at 207}(id. at 1547 [Whalen, P.J., dissenting] [internal quotation marks and citations omitted]).
The dissent further reasoned that the DOL's interpretation was rational:
"[P]ursuant to section 220 (3-e), an employee may be paid at the lower rate for apprentices only for work within the trade classification of his or her apprenticeship program. Any employee who is working outside the trade classification of his or her apprenticeship program is not working 'as such,' i.e., as an apprentice, under the statute. In that circumstance, the employee is entitled to be paid at the rate paid to journey-level workers for 'the classification of work . . . actually performed.' The DOL's interpretation ensures that workers receive appropriate wages based upon the work they perform, and that they receive appropriate training in their trade classification when they are in fact working as apprentices" (id. at 1547-1548 [Whalen, P.J., dissenting] [citations omitted]).
The Appellate Division granted defendants leave to appeal (149 AD3d 1625 [4th Dept 2017]) and certified the question whether its order was properly made. We now reverse and answer the certified question in the negative.
III.
Article I, § 17 of the New York Constitution and Labor Law § 220 require that laborers, workers, and mechanics employed on public works be paid a statutorily determined prevailing wage rate (see Labor Law § 220 [3] [a]). In Matter of Monarch Elec. Contr. Corp. v Roberts (70 NY2d 91 [1987]), we observed that "[a]s originally enacted, the prevailing wage law contained no provision regulating the employment of apprentices on public works projects" (id. at 95) but that, in 1967, the legislature added Labor Law § 220 (3-e) "to expressly prohibit working as an apprentice on a public works project unless a person is individually registered in a State-approved apprenticeship program, and to regulate the allowable ratio of apprentices to journey-level workers" (id. at 95; see L 1967, ch 503). As amended, Labor Law § 220 requires "classification of workers by status—as either journey[workers] or apprentices—and by expertise, as carpenters, ironworkers, roofers, etc." (Monarch Elec. Contr. Corp. at 96). The statute further requires "that all {**32 NY3d at 208}covered workers be paid a journey[worker]'s prevailing wage for their occupation unless they are apprentices registered in accordance with the statute" (id.).
The purpose of Labor Law § 220 (3-e) and a 1966 amendment was
"to prevent subversion of the prevailing wage law, which itself was intended to thwart what had become a widespread competitive practice among contractors of exploiting the labor force in order to submit the lowest bid for public work. Prior to the [1966-1967] amendments, contractors could set up sham training programs which were not supervised by the State, classify persons as apprentices regardless of skill level, and pay them less than journey-level wages" (id. at 95 [citation omitted]).
[*4]Specifically, the law was "intended to prevent employers from cutting standards of construction work by hiring an excessive number of unskilled employees, and to ensure that learning-level workers receive approved, supervised training" (id. at 95-96).
The language of Labor Law § 220 (3-e) is ambiguous. After the awkwardly-worded statement that "[a]pprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the [DOL]," the statute provides that "[a]ny employee listed on a payroll at an apprentice wage rate, who is not registered as above, shall be paid the wage rate determined by the [DOL] for the classification of work [the employee] actually performed" (Labor Law § 220 [3-e]). As we have seen, the DOL interprets the law to mean that an employee who is registered as an apprentice in a particular trade must be paid journeyworkers' wages when performing a public work task outside that trade.
[1] It is well established that when "the interpretation of a statute involves specialized knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts should defer to the administrative agency's interpretation" (Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303, 312 [2005] [internal quotation marks omitted]), as long as the agency provided "a rational interpretation . . . not inconsistent with the plain language" of the statute (James Sq. Assoc. LP v Mullen, 21{**32 NY3d at 209} 
NY3d 233, 251 [2013]). In such circumstances, the DOL's "interpretation of a statute it is charged with enforcing is entitled to deference" (Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]) and, barring irrationality or inconsistency with unambiguous statutory text, its interpretation must be upheld.
"However, where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency. In such a case, courts are free to ascertain the proper interpretation from the statutory language and legislative intent" (Seittelman v Sabol, 91 NY2d 618, 625 [1998] [internal quotation marks and citations omitted]).
In this case, proper analysis of the statutory language calls for an understanding of underlying practices. No interpretation of the plain text of the statute or construction based on its legislative history adequately resolves the meaning of the provision that "[a]pprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the [DOL]."
The controversial point of exegesis is the relation between an apprentice's working "as such" and registering "under a bona fide program." In particular, the words "to work as such" might be taken to mean working as an apprentice, no matter the trade, or to denote working as an apprentice in the apprentice's chosen trade, with the latter interpretation validating the DOL's position. In our view, these issues cannot be appropriately analyzed without an understanding of the underlying operational practices of the trades regulated by the DOL.
Consequently, the DOL's interpretation of Labor Law § 220 (3-e) is entitled to deference unless it is inconsistent with unambiguous language in the statute or irrational. Here, there is no unambiguous text with which the DOL's interpretation clearly conflicts. The DOL is simply interpreting the statute's ambiguous reference to an apprentice's working "as such" (Labor Law § 220 [3-e]) to mean working as an apprentice in the apprentice's chosen trade. It follows that an apprentice may "work as such," i.e., work as an apprentice in a particular trade and receive apprentice wages for tasks classified by the DOL as belonging to that trade, only when registered under an{**32 NY3d at 210} approved apprenticeship program for that trade. Certainly, the dissent's effort to read "as such" as referring to tasks claimed to [*5]be included in the apprenticeship program curriculum is no more compatible with the language of the statute.[FN2] We conclude that the DOL's interpretation is not inconsistent with the statutory language.
IV.
[2] Turning to the question of rationality, the DOL's understanding of the statute is supported by a significant rationale. Labor Law § 220 (3-e), as analyzed by the DOL, ensures that apprentices are learning tasks within their trades and that they are not used as cheap labor.[FN3] The interpretation advanced by the Glazing Contractors would give contractors a financial incentive, particularly if ironworker apprentices were scarce, to divert glazier apprentices from their limited opportunities to learn glazier skills and require them to perform ironworker tasks. There is a substantial risk that employers would seek to use cheaper labor whenever consistent with the construction market. Glazier apprentices would lose significant training hours in their chosen trade if diverted to working in another trade, and they would receive supervision only from journeyworkers who are, at best, expert in a trade different from their own. As amicus New York State Building & Construction Trades Council, AFL-CIO notes, the Appellate Division's holding is not limited to the two overlapping trades of ironworkers and glaziers, but would apply generally. It would have the impractical implication of permitting a contractor to pay an apprentice rate "to a bricklayer apprentice who performs . . . sheet metal work" or to an apprentice painter who does plumbing.
Given that Labor Law § 220 as a whole was "intended to prevent employers from cutting standards of construction work by hiring an excessive number of unskilled employees, and to ensure that learning-level workers receive approved, supervised{**32 NY3d at 211} training" (Monarch Elec. Contr. Corp., 70 NY2d at 95-96), it was rational for the DOL to conclude that section 220 (3-e) prohibits employers from diluting standards by hiring apprentices to perform tasks in trades for which they are not training.
Finally, we reject plaintiffs' contention that the DOL, by requiring contractors to pay journeyworker wages, based on the work actually performed, to apprentices who are working out of their registered trade, has imposed a limitation on employers even though the statute "provides no such limitation" (Matter of Action Elec. Contrs. Co. v Goldin, 64 NY2d 213, 223 [1984]). The statute supports the DOL's interpretation by requiring that the ostensible apprentice who is not in fact appropriately registered be paid journeyworker's wages "for the classification of work . . . actually performed" (Labor Law § 220 [3-e]). The DOL's analysis was not an "arbitrary and irrational interpretation of the statute," unsupported by the statutory language (Action Elec. Contrs. Co., 64 NY2d at 223). On the contrary, we conclude that it is eminently reasonable.
Accordingly, the order of the Appellate Division should be reversed, with costs, the judgment of Supreme Court reinstated, and the certified question answered in the negative.

Garcia, J. (dissenting). I disagree with the majority that apprentice glaziers, enrolled in an apprenticeship program that is properly registered with the New York State Department of Labor (the DOL), performing work required as relevant training by that program's DOL-approved curriculum, must be paid journeyworker rather than apprentice wages. For that reason, I dissent.
New York's prevailing wage law mandates that workers engaged in public work not "be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state" where the public work is to be located (NY Const, art I, § 17). As the majority notes, the DOL is responsible for classifying work performed on public works projects as tasks assigned to specific trades and for determining wage rates for journeyworkers and apprentices within each trade (majority op at 
202). A worker on public works projects must be paid the prevailing wage for the work site's location unless that worker is properly qualified as an apprentice, that is, an unskilled worker learning a construction trade.
It is crucial that apprentices receive training opportunities on construction sites in order to complete their program and{**32 NY3d at 212} become skilled journeypersons, but a contractor would have little incentive to pay a glazier-in-training full journeyworker wages. Labor Law § 220 (3-e) serves to provide that incentive, allowing a contractor on a public works project to pay lower wages to the apprentice and in that way opening up opportunities for the apprentice to develop the necessary skills.
The statute sets forth the requirements:
"Apprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the New York State Department of Labor. The allowable ratio of apprentices to journeymen in any craft classification shall not be greater than the ratio permitted to the contractor as to his work force on any job under the registered program. Any employee listed on a payroll at an apprentice wage rate, who is not registered as above, shall be paid the wage rate determined by the [DOL] for the classification of work he actually performed" (Labor Law § 220 [3-e] [emphasis added]).
The statute does two things critical to the analysis of the issue in this case: (1) it gives the DOL the power to curb potential abuse of the apprentice system by requiring all programs to be approved by the DOL; and (2) it requires, in the section italicized above, certain ratios of journeyworkers to apprentices for each trade classification. Those ratios ensure that employers do not avoid prevailing wage requirements "by hiring an excessive number of unskilled [*6]employees" and that "learning-level workers receive approved, supervised training" (Matter of Monarch Elec. Contr. Corp. v Roberts, 70 NY2d 91, 95-96 [1987]).
As required by the statute, plaintiffs International Union of Painters & Allied Trades, District Council No. 4 (DC4) and International Union of Painters & Allied Trades, Finishing Trades Institute of Western & Central New York (FTI) jointly registered a glazier apprenticeship program with the DOL. This apprenticeship program has been registered with the DOL for more than 20 years, and each year it must go through a recertification process to ensure the program's compliance with the DOL's strict standards for apprenticeship programs in accordance with 12 NYCRR part 601 and Labor Law article 23.
The program's DOL-approved curriculum, "formulated largely by the DOL," reflects the array of skills required to {**32 NY3d at 213}perform glazier work. Glaziers do more than install windows. Among other things, they "select, cut, install, replace, and remove residential, commercial, and artistic glass," and "install aluminum storefront frames and entrances, glass handrails and balustrades, shower enclosures, curtain wall framing, pre-glazed windows and glass and mirror walls." As a result, the curriculum specifically calls for certain hours of training in the installation of storefronts and entrances, curtain wall, and preglazed windows. All these tasks are deemed "meaningful employment and relevant training" for glazier apprentices (12 NYCRR 601.1). Nevertheless, the DOL, under its parallel authority to classify trades, has classified several tasks required to perform these "work processes" as ironwork, rather than glazier work (see Matter of Lantry v State of New York, 6 NY3d 49 [2005]). This classification of certain work performed by glaziers as ironwork has not removed this work from the purview of glaziers or from the required curriculum of a glazier apprentice. The issue here is whether, when performing these tasks as part of the DOL-approved apprentice curriculum, the apprentice should be paid the journeyworker rate for work classified as ironwork.[FN1]
In 2005, in response to an inquiry from plaintiffs, the DOL stated its position on this issue as follows:
"An employee listed on a payroll as an apprentice who is not registered as above or is performing work outside the classification of work for which the apprentice is indentured, must be paid the prevailing journeyworker's wage rate for the classification of work the employee is actually performing" (NY St Dept of Labor, General Provisions of Laws Covering Workers on Public Work Contracts, https://www.labor.ny.gov/workerprotection/publicwork/pwgeneralprovisions.shtm, cached at 
 http://www.nycourts.gov/reporter/webdocs/NYSDOLGenProvLawsCoveringWorkers.pdf).{**32 NY3d at 214}
This "policy" in effect amends the statute to add the italicized language. As a result of this interpretation, plaintiffs allege that glazing contractors are forced to pay inflated labor costs, the glazier apprenticeship program is unable to place registered glazier apprentices on public works projects, glazier apprentices are unable to obtain sufficient field training, and consequently, glazing contractors face a shortage of skilled glaziers.[FN2] In this suit, [*7]plaintiffs seek a declaration that plaintiff glazing contractors may compensate apprentices registered and enrolled in the glazier apprentice program in accordance with the applicable apprentice rates posted by the DOL on taxpayer financed projects, when performing "work constituting a significant portion of the DOL mandated curriculum for glazier apprentices." Essentially, plaintiffs want glazier apprentices to be paid apprentice wage rates when performing work that the DOL has required them to learn, through on-the-job training, in order for them to complete their apprenticeship program.
The Appellate Division rejected the DOL's interpretation of the statute. The majority of that Court refused to defer to the DOL's interpretation because it was "contrary to the plain meaning of the statutory language" (147 AD3d 1542, 1544 [2017]). That Court concluded that the language of the statute was clear and unambiguous and therefore should be given its plain meaning, namely that "glazier apprentices who are registered, individually, under a bona fide glazier apprenticeship program [may] work and be paid as apprentices even if the work they are performing is not work in the same trade or occupation as their apprenticeship program" (id. at 1546). Rather than deciding the issue based on the plain meaning of Labor Law § 220 (3-e), the majority here defers to the DOL's interpretation and finds it "not inconsistent with the statutory language" (majority op at 
210). I agree with the Appellate Division that such deference is inappropriate in this case.
Where there is a "question . . . of pure legal interpretation of statutory terms, deference to the [agency] is not required" (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 102 [1997]). Deference is warranted only where an agency is "applying its special expertise in a particular field to interpret statutory language" (id.). Where instead the question requires statutory {**32 NY3d at 215}analysis "dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight" (Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173 [1988], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). "In such circumstances, the judiciary need not accord any deference to the agency's determination, and is free to ascertain the proper interpretation from the statutory language and legislative intent" (Matter of Gruber [New York City Dept. of Personnel—Sweeney], 89 NY2d 225, 231-232 [1996]). No deference is warranted here.
This is not a case where interpretation of the statute requires any specialized knowledge or expertise. The DOL would make it so by raising the issue of its authority to classify tasks as the work of a particular trade. That expertise is not relevant here. No one disputes the DOL's authority to classify the tasks at issue as ironwork. Indeed, in Matter of Lantry v State of New York (6 NY3d 49 [2005]), this Court deferred to the DOL Commissioner's determination on this issue because classification determinations require a deep understanding of underlying trade practices, of the relevant industries, and of construction trades as a whole. The DOL's expertise would also be relevant to the DOL's determination of the appropriate curriculum for any registered apprenticeship program. Certainly it would be difficult to challenge the DOL's approval of the tasks at issue here as part of the relevant training for a glazier. But once that decision is made by the DOL, and the program is registered and the individual is registered in it, the statute says that worker gets paid at an apprentice wage rate while working in that program.
Even if deference were warranted here, which it is not, the DOL's interpretation in direct contravention of the statute's plain meaning would require us to reject it. An agency determination, even if entitled to deference, that "runs counter to the clear wording of a statutory provision . . . should not be accorded any weight" (Kurcsics, 49 NY2d at 459; Matter of Denton v Perales, 72 NY2d 979, 981 [1988] ["restrictive reading" of statute irrational]). Under the plain meaning of the statute, an apprentice, working in a registered program, is paid as an apprentice. The proffered "ambiguity" in Labor Law § 220 (3-e) is "as such," in the phrase "[a]pprentices will be permitted to {**32 NY3d at 216}work as such only when they are registered . . . ." (See majority op at 
209 ["The controversial point of exegesis is the relation between an apprentice's working 'as such' and registering 'under a bona fide program' "].) Clearly "as such" means "as apprentices," and the sentence goes on to set the conditions for obtaining that status. There is no ambiguity, and if this phrase now qualifies as such (meaning an ambiguity), it is hard to imagine what could be considered unambiguous.
[*8]
Nor can an agency create an ambiguity by adding words to a statute and issuing it as a "policy" (see Matter of Howard v Wyman, 28 NY2d 434 [1971]; see also Raritan Dev. Corp., 91 NY2d at 103-104 [no deference where agency has "grafted onto the language of the current (regulation) an addendum of its own," an interpretation which this Court has "(t)ypically . . . declined to uphold"]). "[N]ew language cannot be imported into a statute to give it a meaning not otherwise found therein" (McKinney's Cons Laws of NY, Book 1, Statutes § 94, Comment at 190 [1971 ed]), and even where an agency's interpretation is entitled to deference, "the agency may not change the eligibility requirements provided by the clear language of the statute" (Matter of Hernandez v Blum, 61 NY2d 506, 512 [1984]).
Moreover, the language the DOL seeks to insert into the statute is found in other provisions of Labor Law § 220. As the Appellate Division majority noted (147 AD3d at 1546), when the legislature sought to narrow several provisions of section 220 to a particular trade or classification, it used restrictive language to demonstrate the intended narrow applicability. For example, section 220 (3) (a) provides that "[t]he wages to be paid for a legal day's work . . . shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality" where the work is to be performed (emphasis added). Section 220 (3) (b) uses the same limiting language. The legislature, however, chose not to include similar or identical language in section 220 (3-e), even though including such language would provide the limitation the DOL seeks to impose. That the legislature did not include such language is indicative of the fact that there was no intent to limit the statute in the manner the DOL suggests (see Matter of Albano v Kirby, 36 NY2d 526, 530 [1975]).
An apprentice performing tasks required by his or her apprenticeship curriculum is clearly working "as such"; that is, as a properly registered apprentice in pursuit of completion of the{**32 NY3d at 217} required curriculum. While the majority adopts the assertion[FN3] of amicus New York State Building & Construction Trades Council, AFL-CIO, that such an interpretation "would have the impractical implication of permitting a contractor to pay an apprentice rate 'to a bricklayer apprentice who performs . . . sheet metal work' " (majority op at 
210), no such outcome is possible under the proper interpretation of the statute. It is unlikely that a bricklayer's apprenticeship program requires him or her to learn sheet metal work; if it did, and the DOL considered that improper or harmful, the DOL could deregister that apprenticeship program.
For the same reason, the majority's assertion that the DOL's interpretation is rational because otherwise "[g]lazier apprentices would lose significant training hours in their chosen trade if diverted to working in another" (majority op at 
210), fails. That the DOL has mandated that these work processes form a required aspect of glazier apprentice training dooms this argument, as well as the Appellate Division's dissenting Justice's assertion that "[t]he DOL's interpretation ensures that workers receive . . . appropriate training in their trade classification when they are in fact working as apprentices" (147 AD3d 1542, 1547-1548 [4th Dept 2017, Whalen, P.J., dissenting]). As the DOL itself has made clear, these tasks are relevant—in fact required—training for glaziers.
Support for plaintiffs' position is also found in section 220 (3-e)'s second sentence, which provides that "[t]he allowable ratio of apprentices to journeymen in any craft classification shall not be greater than the ratio permitted to the contractor as to his work force on any job under the registered program." This means that for each apprentice on a job, a certain number of journeyworkers is required, and this number varies by trade. The ratio requirements are intended to ensure that contractors do not fill their public works jobs with an "excessive number of unskilled employees" in order to avoid paying prevailing wage requirements and to "ensure that learning-level workers receive approved, supervised training" (Monarch, 70 NY2d at {**32 NY3d at 218}95-96). As the DOL conceded at oral argument, the required ratio remains when a glazier apprentice is working outside the trade classification of his or her program and, under [*9]the DOL's rule, is getting paid as a journeyworker. In effect, a contractor would be paying a glazier apprentice as a journeyworker ironworker for certain tasks but counting that worker as an apprentice for purposes of maintaining the same apprentice to journeyworker ratio while that work is performed. Far from being an "incentive" for contractors to hire apprentices to learn the glazier trade, such a rule would serve to deter employment.
It is not surprising, therefore, that plaintiffs' program had no new enrollees in the year 2013, despite the fact that the United States Department of Labor has projected that glazier employment numbers will grow 17% between 2012 and 2022. This is particularly troublesome in that the apprentice program is "the lifeblood" of the local glazier unions because it "ensure[s] the continual supply of skilled glaziers." Moreover, these apprentice training programs are "designed to encourage participation by those traditionally excluded from the skilled trades such as women, members of minority groups, and the disadvantaged" (Monarch, 70 NY2d at 96). Plaintiffs point out that, historically, this glazier apprentice program has had the highest percentage of enrolled women and minorities of any training program in the construction trades. Furtherance of this "compelling policy of eradicating discrimination from our construction industry" (id. at 97) is one more reason to encourage its survival.
Chief Judge DiFiore and Judges Rivera, Stein, Wilson and Feinman concur; Judge Garcia dissents and votes to affirm in an opinion.
Order reversed, with costs, judgment of Supreme Court, Erie County, reinstated and certified question answered in the negative.

Footnotes

Footnote 1:Notably, plaintiffs do not challenge the DOL's classification, as ironwork, of certain tasks that fall within the work processes typically carried out by glaziers. In particular, plaintiffs find no fault with our decision in Matter of Lantry v State of New York (6 NY3d 49 [2005]), where we upheld the DOL's classification of the tasks involved in installing preglazed windows into masonry as ironwork, rather than glazier work.

Footnote 2:Contrary to the dissent's suggestion, the parties dispute whether the DC4 Program's curriculum includes those tasks, within the work processes contemplated by the curriculum, that are classified as ironwork. Even assuming that glazier apprentices in the DC4 Program are required to learn some ironwork tasks, however, this would not compel the conclusion that such tasks must be considered glazier tasks for wage purposes, when performed by glazier apprentices working on public projects.

Footnote 3:DOL does not assert that the Glazing Contractors in this case exploited apprentices in any manner.

Footnote 1:The legislative history of the statute demonstrates an intent to adopt the same method of distinguishing journeyworkers and apprentices as that applied under the federal Davis-Bacon Act and its applicable regulations, 29 CFR 5.5. Those regulations use nearly identical language to that found in Labor Law § 220 (3-e). Yet no party has provided any indication as to the policy of the federal Department of Labor. One case appears to lend support to the plaintiffs' interpretation of the language (see In the Matter of Palmer & Sicard, Inc., 1977 WL 24838, 1977 DOL Wage App Bd LEXIS 5 [US Dept of Labor Wage Appeals Bd WAB case No. 77-12, Dec. 14, 1977]).

Footnote 2:As the majority points out, plaintiffs also allege that the policy has the effect of "inflating the cost of taxpayer-financed projects" (majority op at 
205).

Footnote 3:The majority also argues that "[e]ven assuming that glazier apprentices in the DC4 Program are required to learn some ironwork tasks, however, this would not compel the conclusion that such tasks must be considered glazier tasks for wage purposes, when performed by glazier apprentices working on public projects" (majority op at 
210 n 2). But the point is not that these tasks must be classified as glazier tasks, but that these required tasks, however classified, should be paid at an apprentice wage rate.