# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 88
In the Matter of Jun Wang,
    Appellant,
    v.
Letitia James, &c.,
    Respondent.

Andrew R. Borelli, for appellant.
Kevin C. Hu, for respondent.

CANNATARO, J.:

The issue presented on this appeal is whether petitioner, a physician who rendered professional services to a person incarcerated by the State, was "acting at the request of" the Department of Corrections and Community Supervision (DOCCS) within the meaning

- 1 -

of Correction Law § 24-a such that he is entitled to defense and indemnification from the State in an ensuing medical malpractice action. Because the statutory language contemplates an express request for professional services by DOCCS, the State has no obligation to defend and indemnify petitioner.

While incarcerated at the Auburn Correctional Facility, an individual (the patient) developed a mass in his right armpit and was referred to Dr. R. Wayne Cotie, a surgeon who provided professional services to incarcerated individuals pursuant to a contract with DOCCS. Dr. Cotie recommended a biopsy of the mass and DOCCS approved the procedure. The biopsy was performed at the Cortland Regional Medical Center (CRMC), where Dr. Cotie had surgical privileges. Dr. Cotie sent the biopsy specimen to CRMC's pathology department for examination. The hospital had a contractual arrangement with Cortland Pathology, a private pathology group that had sole and exclusive rights to perform clinical pathology services for CRMC. Petitioner, Dr. Jun Wang, the Medical Director of CRMC's pathology department and a member of Cortland Pathology, examined the specimen and concluded that the mass was benign. Approximately one year later, the patient was diagnosed with Hodgkin's lymphoma.

In February 2015, the patient commenced a medical malpractice action against, among others, CRMC, alleging that they misdiagnosed his condition as benign and failed to timely diagnose or refer him for treatment of Hodgkin's lymphoma. CRMC thereafter filed a third-party complaint against petitioner and Cortland Pathology, seeking contribution and indemnification. Petitioner then sought defense and indemnification from the State, asserting that he was entitled to coverage under Public Officers Law § 17 and

Correction Law § 24-a because the alleged acts or omissions giving rise to the malpractice action arose from the treatment of an incarcerated person at the request of DOCCS. The Attorney General declined to defend and indemnify petitioner, opining that petitioner treated the incarcerated individual pursuant to his employment arrangement with CRMC and that, in the absence of any contract or agreement directly between the State and petitioner to treat incarcerated persons, the State had no statutory obligation to provide defense or indemnification.

After the Attorney General denied petitioner's request for reconsideration, petitioner commenced this CPLR article 78 proceeding to annul the determination, asserting that the conclusion that he was not entitled to defense and indemnification was irrational, arbitrary and capricious, and an abuse of discretion. Supreme Court denied the petition. Concluding that the Attorney General's determination was entitled to deference because the statutory interpretation question involved the specific application of a broad statutory term, the court held that the determination was properly made.

The Appellate Division affirmed, agreeing that the Attorney General's determination was entitled to deference (207 AD3d 1176 [3d Dept 2022]). The Court observed that there was no record evidence to support the conclusion that DOCCS expressly requested petitioner's services and rejected petitioner's contrary argument that Correction Law § 24-a applied to an implied request for professional healthcare services (*see* 207 AD3d at 1178). This Court granted petitioner's motion for leave to appeal (39 NY3d 906 [2023]) and we now affirm.

Under Public Officers Law § 17, the State has the obligation to defend and indemnify its employees in actions arising out of the scope of their public employment (*see* Public Officers Law § 17 [1] [a], [2] [a], [3] [a]). An "employee" is defined as "any person holding a position by election, appointment or employment in the service of the state, . . . whether or not compensated" (Public Officers Law § 17 [1] [a]). The statute expressly excludes independent contractors from coverage (*see* Public Officers Law § 17 [1] [a]).

Under Correction Law § 24-a, the provisions of Public Officers Law § 17 are made applicable to "any person holding a license to practice a profession. . . who is rendering or has rendered professional services authorized under such license while *acting at the request of the department* or a facility of the department in providing health care and treatment or professional consultation to incarcerated individuals of state correctional facilities" (emphasis added). The Attorney General has interpreted this language to mean that the State's obligation to defend and indemnify applies only where there has been an express request by DOCCS for the services of a particular provider—i.e., a formal arrangement or understanding made in advance between DOCCS and the healthcare professional.

A threshold question arises as to whether the Attorney General's interpretation of the statute is entitled to deference. Deference is accorded to an agency's interpretation of a statute when the interpretation involves the specialized competence or expertise the agency has developed in administering the statute (*see Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47 [1988]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). More particularly, courts defer to the administrative agency where the issue "involves knowledge and understanding of underlying operational practices or entails an

evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics*, 49 NY2d at 459; *see International Union of Painters & Allied Trades, Dist. Council No. 4 v New York State Dept. of Labor*, 32 NY3d 198, 209 [2018]; *Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund*, 98 NY2d 548, 553 [2002]).[1]  However, "where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency . . . [and] the judiciary need not accord any deference to the agency's determination" (*Matter of Belmonte v Snashall*, 2 NY3d 560, 566 [2004] [internal quotation marks and citation omitted]).

The answer to whether a service was performed "at the request of" DOCCS does not involve any specialized knowledge or expertise by the Attorney General.  Instead, whether a professional service was performed "at the request of" DOCCS is a question of pure statutory reading and analysis and thus deference to the Attorney General is not required.

---

[1] Although we have also recognized that deference to an agency's interpretation of statutory language "is appropriate 'where the question is one of specific application of a broad statutory term' " (*Matter of O'Brien v Spitzer*, 7 NY3d 239, 242 [2006] [citations omitted]; *see NLRB v Hearst Publications, Inc.*, 322 US 111 [1944], *overruled as stated in Nationwide Mut. Ins. Co. v Darden*, 503 US 318 [1992]; *cf. Matter of Peyton v New York City Bd. of Stds. & Appeals*, 36 NY3d 271, 280-281 [2020]), we have rarely done so since we decided *Kurcsics*.  Aside from *O'Brien*, we have deferred on that basis only in a case involving the construction of tax statutes (*see Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393, 400 [1984]), where the Department of Taxation and Finance "necessarily must apply expertise to the detailed labor of fitting tax filings and other accounting artifacts into the language of the Tax Law" (*Lorillard Tobacco Co. v Roth*, 99 NY2d 316, 323 [2003]).

Turning to the statutory language at hand, "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the [l]egislature. As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language [of the statute] itself, giving effect to the plain meaning thereof" (*People ex rel. E.S. v Superintendent, Livingston Corr. Facility*, 40 NY3d 230, 235 [2023] [quotation marks and citations omitted]). " '[A]ll parts of a statute are intended to be given effect' and 'a statutory construction which renders one part meaningless should be avoided' " (*Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018], quoting *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 515 [1991]). Additionally, given that the statute at issue here is in derogation of common law, it should be narrowly construed (*see Morris v Snappy Car Rental*, 84 NY2d 21, 28 [1994]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 301).

Petitioner performed pathology services on the biopsy sample as a result of his contract with the hospital, not because he was acting at DOCCS' request or executing any public responsibility associated with the care or treatment of incarcerated individuals. Nonetheless, petitioner asserts that the statutory language should be read broadly to encompass ancillary professional services rendered as a necessary component of a medical procedure performed at DOCCS' request, such as the pathology services provided here. However, to interpret the statute as petitioner suggests would read the operative language— "at the request of the department"—out of the provision, in contravention of our established rules of statutory construction. If the legislature intended to require the State to defend and indemnify all medical services rendered to incarcerated persons in the manner now

suggested by petitioner, it could have so provided.  In light of the above, the Attorney General's determination that petitioner was not entitled to defense and indemnification under the statute was not irrational, arbitrary and capricious, or an abuse of discretion (*see Matter of Lemma v Nassau County Police Officer Indem. Bd.*, 31 NY3d 523, 528 [2018]).

The interpretation urged by petitioner would also expose the State to an undeterminable expansion of financial responsibility for independent professional contractors, as it would require coverage of healthcare professionals with whom the State has no connection and without the opportunity for the State to assess the level of risk presented by these providers.  Our interpretation is further supported by language in Public Officers Law § 17 (7)—incorporated by reference in Correction Law § 24-a—providing that the State's duty to defend and indemnify "shall not be construed to impair, alter, limit or modify the rights and obligations of any insurer under any policy of insurance."  As we have previously recognized, public policy supports construing the State's duty in this respect narrowly, as "[t]he purpose of Public Officers Law § 17 is, in essence, to provide insurance against litigation" (*see O'Brien*, 7 NY3d at 243).  It is unlikely that the legislature intended that the State would be a substitute for a physician's private malpractice insurance in the circumstances presented (*see id.*).[2]

---

[2] Indeed, the legislative history suggests that the purpose of Correction Law § 24-a is to encourage medical professionals to offer services to the State's incarcerated population by providing insurance against litigation (*see* Letter from Off of Mental Health and Off of Mental Retardation and Developmental Disabilities, June 29, 1978 at 2, Bill Jacket, L 1978, ch 466; *accord* 1980 Ops Atty Gen 40).  Providing insurance to a person in petitioner's position would not further this policy.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Order affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.

Decided December 14, 2023