State of New York
Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 9
In the Matter of Tina Leggio,
        Appellant,
        v.
Sharon Devine, &c. et al.,
        Respondents.

Beth C. Zweig, for appellant Tina Leggio.
Andrew W. Amend, for respondent Devine.
Empire Justice Center, amicus curiae.

WILSON, J.:

In this CPLR article 78 proceeding, a parent challenges the determination of a local

social services agency, confirmed by a state agency, that child support payments she

receives, made for the benefit of five of her children living at home, including two college

- 1 -

students between the ages of 18 and 22, are included as "household" income when deciding whether and to what extent the household is eligible for benefits under the federal Supplemental Nutrition Assistance Program (SNAP), commonly referred to as "food stamps." She contends that because her two children in college are ineligible for SNAP, their pro rata share of the support funds should be excluded, lowering the household's income such that it would qualify to receive SNAP benefits. We confirm the agency's determination based on deference to its policy choice in administering a federal assistance program.

I.

Congress created SNAP to provide food for people in need. SNAP is administered by the states, in compliance with rules and regulations set by the U.S. Department of Agriculture (USDA). SNAP benefits are disbursed to "household" units based on a formula that considers a household's income and size.

At the relevant time, petitioner Tina Leggio was a single parent raising five children under the age of 22. [1] The two eldest children were full-time college students who lived at home. Because they did not satisfy any of the conditions for a student enrolled in higher education at least half-time to be eligible for SNAP, as enumerated in 7 CFR 273.5(b), and were not otherwise eligible for a federal exemption under the law, they were ineligible for the program. The children's father paid $593.75 per week to support all five children. The

---

[1] Ms. Leggio's sixth child was older than 22 at the relevant time and is not at issue in this appeal.

household had been receiving SNAP benefits because Ms. Leggio's income, including the child support, had been below the applicable income limit.

In October 2014, upon Ms. Leggio's application to recertify under SNAP, the Suffolk County Department of Social Services (DSS) discontinued the household's benefits because its income exceeded the upper limit for a household of four (Ms. Leggio plus her three younger children, excluding the two in college). Because the two older children were ineligible for SNAP, DSS did not count them as household members. Nevertheless, DSS included the full amount of child support in its calculation of household income. Ms. Leggio challenged that determination, contending that because her two children in college were excluded from SNAP benefits, their pro rata share of the child support payment (two-fifths of $593.75, or $237.50 per week) should likewise be excluded from household income, rendering the household SNAP-eligible. [2]

After a hearing, the Office of Temporary and Disability Assistance (OTDA) determined that DSS correctly discontinued Ms. Leggio's benefits. OTDA held that child support funds are "income given to the parent and [are] under the parent's control" and therefore, the total amount of child support was household income, even though a portion of it was used "exclusively for [Ms. Leggio's two college student] sons' everyday expenses, such as school, clothing, and food" (Decision After Fair Hearing, No. 6878939Z [OTDA December 30, 2014]). OTDA's analysis depended on the fact that the students

---

[2] As of October 1, 2014, the limit on net monthly income for a household of four to receive SNAP benefits was $2,160.03 (A-150). The contested pro rata share of child support was $1,029.17, which, if excluded, would have lowered the household's net monthly income from $2,917.26 to $1,888.09.

lived at home, as distinguished from "child support income for an ineligible student living outside of the SNAP household" which must be excluded from household income.

Ms. Leggio brought this CPLR article 78 proceeding to annul OTDA's determination. Supreme Court transferred the matter to the Appellate Division, which confirmed OTDA's determination on a different rationale and dismissed the proceeding (158 AD3d 803 [2d Dept 2018]). Although it held that the child support monies were income of the children, not Ms. Leggio, the Appellate Division concluded that because the college students were disqualified from SNAP, and did not work a minimum of twenty hours per week or qualify for any other exemption that would make them SNAP-eligible, their unearned income still qualified as income of the household pursuant to 7 CFR 273.11(c)(1). That section counts the income of persons disqualified from SNAP for failure to comply with work requirements, among other program disqualifiers, against the remaining SNAP-eligible household members.

We granted Ms. Leggio leave to appeal, and now affirm the Appellate Division order on different grounds. The plain text of the statutes and regulations that bind OTDA provide that income of ineligible college students, including child support income, must be excluded from household income, contrary to the Appellate Division's reading of the governing law (see 7 CFR 273.5[d]; 273.11[d]). Consequently, if Ms. Leggio's two eldest children are the owners of their pro rata shares of the child support she receives, the household would be eligible for SNAP benefits.[3] Conversely, if child support funds are

---

[3] OTDA agrees: it has consistently taken the position in this proceeding that if the child support payments are deemed to be the property of the children—for example, if paid

considered income of the custodial parent who received them (here, Ms. Leggio) they are household income not subject to any exclusion, and Ms. Leggio's household's income would be too high to receive SNAP benefits. Although the consequences of allocating the income are clear, the threshold question, whether child support is income of the recipient-parent or of the beneficiary-child for purposes of determining eligibility for SNAP benefits, is unresolved by any federal or state statute or regulation or decision of this Court.

We conclude that OTDA's interpretation of the federal statutes it administers was not irrational and is entitled to deference and thus, for the purposes of SNAP, child support directly received by a parent is household income, even if it is used for the benefit of an ineligible college student living at home.

II.

A

In the context of SNAP, "household" is a term of art meaning "an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others; or a group of individuals who live together and customarily purchase food and prepare meals together for home consumption" (7 USC § 2012[m][1]). USDA has adopted rules applying the household concept to various living arrangements including, as relevant here, that people under the age of 22 and living with a parent, "must be considered as customarily purchasing food and preparing meals with the others, even if they do not do so, and thus must be included

---

directly to a college student—those funds must be excluded from the income attributed to the household of which they are part.

in the same household, unless otherwise specified" (7 CFR 273.1[b][1][ii]).  Thus, under federal law, Ms. Leggio's two children in college are part of her household for SNAP purposes.

To be eligible for SNAP benefits, household members between the ages of 16 and 60 also must comply with work requirements set out in 7 CFR 273.7, promulgated pursuant to the statutory conditions of participation in the program (see 7 USC § 2015[d][1]).  Household members between the ages of 18 and 50 who are students are exempt from the work requirements set forth in section 273.7 but are not eligible to participate in SNAP unless they comply with student-specific eligibility requirements found in 7 CFR 273.5(b) (see 7 USC § 2015[e]; 7 CFR 273.7[b][viii]).  Students can satisfy those requirements by working a minimum of 20 hours per week, participating in a state or federally financed work-study program, or participating in an on-the-job training program, among other ways.  Some students are eligible for SNAP without participating in qualifying work, such as those who are physically or mentally unfit, receiving Temporary Assistance for Needy Families benefits, or responsible for the care of certain dependents.

Federal regulations govern the way in which administering state agencies account for the income of people who fall within or without SNAP eligibility rules (see 7 CFR 273.11).  When a household member is ineligible for SNAP benefits based on a failure to comply with the work requirements of section 273.7, that person's income nevertheless counts as income available to the household under section 273.11(c)(1).  In other words, the household is penalized when one of its members fails to meet work requirements

because that person is not counted as a member of the household, lowering the denominator in the income-to-people ratio, though that person's income is still counted in the numerator.

According to the student-specific rules of 7 CFR 273.5, "the income and resources of an ineligible student shall be handled as outlined in § 273.11(d)," which is different from the regulations' treatment of other SNAP-ineligible people, whose income is handled under section 273.11(c). In turn, section 273.11(d) excludes the income of certain nonhousehold members from the household. The effect is that a household is penalized for income attributable to someone who fails to comply with work requirements, immigration requirements, or other rules of SNAP (such as refusing to obtain or provide a social security number) but is not penalized for income attributable to a SNAP-ineligible student. The rulemaking history of section 273.5 confirms that it was USDA's intent to treat students differently from other SNAP-ineligible people, as evidenced by that agency's response to comments in its final rule:

> "Two State agencies and a Regional office questioned the classification of ineligible students as non-household members rather than disqualified individuals for purposes of handling their income and resources. The State agencies felt that a student's income and resources should be considered in determining the eligibility and benefit level of the food stamp household. The Department feels, however, that students who do not meet one of the eligibility criteria of Pub. L. 96-249 [adding student eligibility requirements of 7 USC 2015(e)] do not fall into the same class as a person who has unlawfully entered the country or who has refused to provide his or her social security number"

(1980 Food Stamp Amendments; Eligibility Limits; Final Rule, 46 FR 43020, 43023-43024 [1981]).

B

Applying the regulations to the case at bar, if Ms. Leggio's two eldest children are the owners of their pro rata shares of the child support payments, then those funds are not household income. At the relevant time, the children were under the age of 22 and lived at home, making them mandatory household members (7 CFR 273.1[b][1][ii]). They were not eligible to participate in SNAP because they failed to comply with student-specific eligibility requirements (7 CFR 273.5[b]). But as ineligible college students, their income would not count towards the income of their household (7 CFR 273.5[d], 273.11[d]).

The Appellate Division incorrectly applied section 273.11(c) to the income of the ineligible students when the student-specific rules of section 273.5(d) require the state to apply section 273.11(d) instead. Both here and below, OTDA and Ms. Leggio agreed that subsection (d), not (c), applies, which is consistent with the plain language and history of the federal statutes and regulations. Section 273.5(d) directs that "[t]he income and resources of an ineligible student shall be handled as outlined in section 273.11(d)." In turn, section 273.11(d) excludes from household income the income and resources of "nonhousehold members defined in section 273.1(b)(1) . . . who are not specifically mentioned in paragraph (c) of this section." Students under the age of 22 and living at home are covered by section 273.1(b)(1) and are not mentioned in paragraph (c), which covers, as relevant, "household members determined ineligible because of a disqualification for . . . noncompliance with a work requirement of section 273.7" and includes their income "in its entirety" in household income (7 CFR 273.11[c][1][i]).

The Appellate Division determined that Ms. Leggio's children were in "noncompliance with a work requirement of section 273.7" because they did not meet the student-specific eligibility requirements in section 273.5(b). That was an error. Section 273.7(b) covers "exemptions from work requirements" and provides that "[s]tudents enrolled at least half-time in an institution of higher education must meet the student eligibility requirements listed in section 273.5" instead of the work requirements of section 273.7 (7 CFR 273.7[b][1][viii]). As a result, section 273.11(c)(1) cannot apply to students because it covers ineligible household members who are not in compliance with a "work requirement of section 273.7"—a section from which students are exempted.

Section 273.5(d)'s explicit direction that the income of ineligible students be handled according to section 273.11(d), which excludes their income, rather than section 273.11(c), which would include it, reflects USDA's intent to exclude the income of ineligible students from household income (see also 1980 Food Stamp Amendments; Final Rule, 46 FR at 43024). Under the Appellate Division's reading of these interconnected regulations, 273.5(d)'s only purpose would be to point the agency back to section 273.11(c), rendering the student-specific provision superfluous (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 587 [1998]). We reject that reading as incongruous with the intent of USDA, evidenced by both the plain text and rulemaking history of the regulations.

C

On the other hand, if the child support funds are Ms. Leggio's income, they would count as household income. It is uncontested that she is a member of the household and is

otherwise SNAP-eligible.  Ms. Leggio argues that even if considered her income, the portion of child support monies attributable to her two college student children should be excluded from household income pursuant to the "maintenance exclusion" of 7 USC § 2014(d)(6).  Under that section, funds that would otherwise count as household income must be excluded when they are "received and used for the care and maintenance of a third-party beneficiary who is not a household member".  However, because Ms. Leggio's children are mandatory household members, the maintenance exclusion does not apply to them.

There is a fair argument that the federal regulations are ambiguous as to whether ineligible students are household members because 7 CFR 273.1(b)(7) says that students "are not eligible to participate as separate households <u>or as a member of any household</u>" (emphasis added).  One reading would hold that, on the plain text, ineligible students may not be considered household members.  That reading is supported by the rulemaking history of section 273.5, where the agency referred to "the classification of ineligible students as non-household members rather than disqualified individuals" (1980 Food Stamp Amendments; Final Rule, 46 FR at 43024).  Another reading of the regulation would hold that even though students living at home are household members (per 7 CFR 273.1[b][1][ii]), they "are not eligible <u>to participate</u>" as such.  That reading can be supported by emphasis on the second clause of the same sentence from the final rulemaking, referencing "the classification of ineligible students as non-household members rather than disqualified individuals <u>for purposes of handling</u> their income and resources" (1980 Food Stamp Amendments; Final Rule, 46 FR at 43024).

New York has resolved the ambiguity in the federal scheme through a regulation that differentiates between "nonhousehold members" like roomers and live-in attendants, handled by Department of Social Services (18 NYCRR) § 387.1(x)(3), and "ineligible individuals" including "ineligible students", handled by section 387.1(x)(4). At least in New York, students living at home are household members, even if they are ineligible to participate in SNAP. Therefore, funds collected and used for their benefit are not subject to the maintenance exclusion.

The texts of the applicable federal and state statutes and regulations dictate that if child support is income of the child, it must be excluded from household income. If it is income of the parent, it must be included. There the textual clarity ends.

### III.

States administer SNAP consistent with the federal laws on eligibility but retain leeway in their program design within the federal framework (7 USC § 2014[b]; see generally United States Department of Agriculture State Options Report [14th ed 2018]). Federal law compels states to exclude the income of SNAP-ineligible students from household income, but it is silent as to whether child support funds paid to a parent to support a child are income of the parent or of the child. Thus, the issue could be resolved by federal or state statute or regulation. In New York, OTDA administers SNAP as "the agent" of the federal government, consistent with all federal regulations, which have been largely restated verbatim via state regulations (Department of Social Services [18 NYCRR] 387.0). Those regulations, in turn, instruct the local social services districts that directly implement the program.

As OTDA points out, some states have stepped into the breach and determined, via agency action, to whose income child support payments are attributed for SNAP purposes—and have come to different conclusions. In Alabama, Alaska, and West Virginia, the relevant state agencies have published policy guides directing that child support payments count as the income of the person receiving them—generally, a parent. Florida, Indiana, and Missouri have directed the opposite: child support is income of the child, even if it is paid to a custodial parent.[4] The parties have pointed to no New York statute or regulation that answers the question.[5] OTDA's SNAP sourcebook is likewise silent on the matter.

---

[4] Res Br at 37 nn 16-17, comparing Alabama Dep't of Human Resources, Food Assistance Points of Eligibility Manual § 901(B)(4) ("Child support is considered the income of the person to whom it is legally obligated, usually the custodial parent."); Alaska Dep't of Health & Social Servs., Supplemental Nutrition Assistance Program (SNAP) Manual § 602-3B(3) ("Child support payments are counted as income to the person receiving it."); West Virginia Dep't of Health & Human Resources, West Virginia Income Maintenance Manual § 4.4.4.P ("[C]hild support is counted for the AG [Assistance Group] that receives the income, even when it is forwarded to, and/or used, for the child.") with Florida Dep't of Children & Families, Access Florida Program Policy Manual § 1810.0700 (child support "is considered as unearned income of the child for whom the payment is intended"); Indiana Family & Social Servs. Admin., Program Policy Manual § 2805.15.05.05 (directing program administrators to "[c]onsider child support income to be the income of the child"); Missouri Dep't of Social Servs., Income Maintenance Manual § 1115.010.00 (child support "is income to the child for whom the payment is made if the child is in the [eligibility unit]").

[5] Under Social Services Law § 111-h(4), "[a]ny and all moneys paid into the support collection unit pursuant to an order of support made under the family court act or the domestic relations law, where the petitioner is not a recipient of public assistance, shall upon payment into such support collection unit be deemed for all purposes to be the property of the person for whom such money is to be paid." Though the parties agree that the child support here was paid to a support collection unit, any argument that this fact should affect OTDA's determination was not raised before or considered by OTDA, and

In the administrative proceeding, OTDA cited no statutory text, cases, agency policy, or prior fair hearing decisions for its conclusion that the child support income is Ms. Leggio's because it "is given to the parent and is under the parent's control" (Decision After Fair Hearing, No. 6878939Z at 9). The Appellate Division held OTDA's determination to be "without merit" based on a common law principle that child support is a duty that runs from the payor-parent to the beneficiary-child, and the intermediary custodial parent is merely a conduit or trustee of the funds (see Leggio, 158 AD3d at 805 [2d Dept 2018], citing Modica v Thompson, 300 AD2d 662, 663 [2d Dept 2002]; Matter of Commissioner of Social Servs. [Lachs] v Grifter, 150 Misc2d 209, 212 [Family Ct, New York County 1991]).

As a preliminary matter, we must determine the proper role of deference in this appeal. Where "the interpretation of a statute involves specialized knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts should defer to the administrative agency's interpretation" (Intl. Union of Painters & Allied Trades v New York State Dept. of Labor, 32 NY3d 198, 209 [2018] [quotations omitted]). However, "[w]here instead the question requires statutory analysis 'dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much

_____

therefore that argument is unpreserved for our review (see Matter of Corrigan v New York State Off. of Children & Family Servs., 28 NY3d 636, 643 [2017]).

less weight'" (id. at 215, citing Matter of Moran Towing & Transp. Co. v New York State

Tax Commn., 72 NY2d 166, 173 [1988] and quoting Kurscics v Merchants Mut. Ins. Co.,

49 NY2d 451, 459 [1980]; see also Seittelman v Sabol, 91 NY2d 618, 625-626 [1998]).[6]

Accounting for child support income in the context of SNAP requires no specialized

knowledge of operational practices or factual data. But it is likewise not a question of pure

statutory interpretation because there is no statutory or regulatory language—not even

ambiguous language—to interpret. Instead, this question comes down to a policy decision

within the cooperative federalism framework of a national program committed to state

administration (see Rodriguez v Perales, 86 NY2d 361, 367 [1995]); see also Bridget A.

Fahey, Consent Procedures and American Federalism, 128 Harv L Rev 1561 [2015]).

---

[6] OTDA argues that it is entitled to deference because its position is an interpretation of Department of Social Services (18 NYCRR) § 387.10(b)(3)(iii), which defines "unearned income" as, among other things, "support or alimony payments made directly to the household from nonhousehold members" (see also 7 CFR 273.9[b][2][iii] [same]). However, 18 NYCRR § 387.10(b)(3)(iii) is insufficient to resolve the issue before us. To be sure, the child support payments in question were made by Ms. Leggio's former husband—who is not a household member—to either Ms. Leggio or her children, who are all household members. The relevant question is whether, under *federal* regulation 7 CFR 273.5(d)—which has no state analogue—the money is properly considered "the income and resources of an ineligible student." If so, as discussed above, that income must be excluded from household income (see 7 CFR 273.11[d]). Thus, even if the child support is the unearned income of the household per state regulation, it may nevertheless be excludable because of a federal regulation particular to student income that is binding upon the state. OTDA does not cite to any federal or state regulation particular to student income that is binding upon the state and bears on the treatment (or exclusion) of child support payments. Therefore, OTDA's policy as to the treatment of child support payments made for the benefit of college students is not an interpretation of its own regulation and does not qualify for deference under the solicitude given to an agency's interpretation of its own regulation, when within its area of expertise (see Andryeyeva v New York Health Care Inc., 33 NY3d 152, 174 [2019], quoting Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]).

There is evidence that either position is acceptable under federal law, as demonstrated by the varying positions taken by different states (see note 2 supra; see also Ruhe v Bergland, 683 F2d 102, 105 [4th Cir 1982] [upholding Virginia's treatment of cash housing subsidies as household income for SNAP purposes based on "the household's control of cash" as having "a reasonable basis"]).   Therefore, it was not irrational for OTDA to determine that because Ms. Leggio received the child support and was able to use it, in her discretion, to provide food for the household, the support counted as household income, including the portion made in favor of her SNAP-ineligible college student children.

Accordingly, we defer to OTDA's policy choice as consistent with the applicable statutes and regulations, if it is rational (see Gilman v New York State Div. of Hous. and Community Renewal, 99 NY2d 144, 149 [2002]; Matter of Pell v Bd. of Educ. Of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).  As noted above, OTDA has not adopted a policy through notice-and-comment rulemaking, or even stated a policy in its SNAP sourcebook.  Instead, the agency has developed its policy as a common law court does, via *stare decisis* through *ad hoc* adjudications that must comport with the "underlying precept . . . that in administrative, as in judicial, proceedings justice demands that cases with like antecedents should breed like consequences" (Matter of Charles A. Field Delivery Serv., 66 NY2d 516, 519 [1985]; quoting Matter of Howard Johnson Co. v State Tax Commn., 65 NY2d 726, 727 [1985] [internal quotations omitted]).  The agency must follow its own precedent or must explain why it has distinguished the case before it or changed policies.  "Absent such an explanation, failure to conform to agency precedent will . . . require reversal on the law as

arbitrary, even though there is in the record substantial evidence to support the determination made" (Charles A. Field, 66 NY2d at 520 [1985]).

OTDA's fair hearing decisions concerning child support payments for the benefit of college-aged students have not been a model of clarity.[7] However, as to the specific question at issue here, OTDA's core policy has been mostly consistent with the rule it applied: when a student lives at home and a parent directly receives child support provided in whole or in part for the care of that student, the monies are income of the parent (FH No. 7231042M [April 26, 2016] ["[t]he rule regarding child support is that the income belongs to the person to whom it is assigned"]).[8]

Although OTDA's prior decisions have not established its policies as clearly as a published set of rules or instructions in a handbook might have, we defer to the agency's rational policy, as asserted now with support in its previous findings, that the child support

---

[7] For instance, when funds are received by a parent and immediately forwarded to a student living away at school, OTDA has not considered those funds to count as household income, though it has sometimes considered the funds income of the student (Decision After Fair Hearing No. 7683685Q [OTDA April 3, 2018]); and other times income of the parent but subject to the maintenance exclusion (FH No. 7256864R [April 6, 2016]; FH No. 6571007K [Feb. 6, 2014]). OTDA similarly has found that funds received by a parent for an ineligible student living at home and spent by the parent for the student's benefit were subject to the maintenance exclusion—contrary to its decision in the instant case—in a decision it now disavows (FH No. 6479136L [Nov. 8, 2013]; Resp Br at 22, n 11). When child support funds are paid directly to a student, OTDA considers those funds as income of the student (FH No. 7637515N [Dec. 29, 2017]; Oral Arg Tr at 20) but if the parent jointly has access to the bank account, the income is attributable to the parent (FH No. 7224173H [April 5, 2016]).

[8] Notably, in 2018, two Fair Hearing decisions held the opposite (Decision After Fair Hearing No. 7758129M [OTDA July 5, 2018]; FH No. 7856769 [Dec. 21, 2018]). OTDA claims the change was to conform with the Appellate Division's decision in this case (Resp to Amic Br at 10, n 3). For purposes of this appeal, we accept that explanation.

at issue, paid directly to her and over which she had discretion, was properly considered

Ms. Leggio's income and therefore properly included as the income of her household. [9]

## IV.

Deferring to OTDA, we hold that child support paid directly to Ms. Leggio was

not irrationally determined to be her income. Because the maintenance exclusion applies

to nonhousehold members and federal and state regulation make clear the ineligible

students are household members, that exclusion does not apply.

Accordingly, the judgment of the Appellate Division should be affirmed, without

costs.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Judgment affirmed, without costs. Opinion by Judge Wilson. Chief Judge DiFiore and
Judges Rivera, Stein, Fahey, Garcia and Feinman concur.

Decided February 13, 2020

---

[9] Amici attack OTDA's policy as unfair to struggling households attempting to provide food for college students living at home. However, determination of the wisdom of OTDA's policy is left to the other branches of our government (see, e.g., Governor Andrew M. Cuomo, 2020 State of the State Book, "Proposal. Expand College Student Enrollment in Supplemental Nutrition Assistance Program (SNAP) Benefits" at 257, available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/2020StateoftheState Book.pdf [last accessed Feb. 11, 2020]).